**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| JOSHUA DUGGAR, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:17-cv-05125-TLB |
| v. | ) | |
| | ) | |
| CITY OF SPRINGDALE, ARKANSAS; | ) | |
| WASHINGTON COUNTY, ARKANSAS; | ) | |
| THE STATE OF ARKANSAS, | ) | |
| DEPARTMENT OF HUMAN SERVICES, | ) | COMPLAINT FOF INJUNCTIVE RELIEF |
| DOUG SPROUSE, in his official capacity; | ) | AND DAMAGES FOR: |
| KATHY O'KELLEY, in her official and | ) | 1) INVASION OF PRIVACY - Public |
| individual capacity; | ) | Disclosure of Private Facts; |
| ERNEST CATE, in his official capacity; | ) | 2) INVASION OF PRIVACY - |
| DOUG SPROUSE, in his official capacity; | ) | Appropriation; |
| RICK HOYT, in his official capacity; | ) | 3) INVASION OF PROPERTY - Intrusion |
| STEVE ZEGA, in his official capacity; | ) | upon seclusion; |
| BAUER PUBLISHING COMPANY, L.P.; | ) | 4) TORT OF OUTRAGE; |
| BAUER MAGAZINE, L.P.; | ) | 5) VIOLATION OF DUE PROCESS - |
| BAUER MEDIA GROUP, INC. | ) | Under the Arkansas Constitution |
| BAUER, INC.; | ) | 6) 42 U.S.C. § 1983 – 14th Amendment |
| HEINRICH BAUER NORTH AMERICA, INC. | ) | Violation of Due Process |
| BAUER MEDIA GROUP USA, LLC, and | ) | 7) 42 U.S.C. § 1983 - *Monell* |
| DOES 1-10, inclusive, | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO CITY DEFENDANTS'**
**MOTION TO DISMISS**

### I. INTRODUCTION

Plaintiff is seeking injunctive relief, compensatory and punitive damages against Defendants

for violation of Plaintiff's civil and other due process rights under the Fourteenth Amendment of the

United States Constitution and Arkansas law. Plaintiff seeks to hold to account the City of

Springdale (the "City") and certain officials and employees of the City, including former Police Chief

Kathy O'Kelley and City Attorney Ernest Cate (collectively with the City, the "City Defendants"),

accountable for their improper and unlawful release of an Offense Report containing intimate and

humiliating details of an intensely personal nature that were contained in records of a juvenile

investigation protected from public dissemination under Arkansas law.  City Defendants' Motion to Dismiss1 ("MTD"), argues that all claims against the City Defendants must be dismissed due to issues qualified and statutory immunity and alleges that Plaintiff failed to plead sufficient facts to support their claims for relief.  These arguments, however, must fail, as they misconstrue the allegations in the Complaint and the applicable law.  Defendants O'Kelley and Cate (collectively "Individual Defendants") have not satisfied their burden to establish qualified immunity.  Individual Defendants ignore the actual allegations in the Complaint arguing that Plaintiff has not demonstrated a fundamental right in the information revealed by the City Defendants.  According to Individual Defendants, Plaintiff's fundamental rights were not clearly established and Individual Defendants are entitled to qualified immunity.

Taking the Complaint as a whole, however, it is clear that Plaintiff has demonstrated a fundamental right to privacy in the contents of the Offense Report released by City Defendants under both state and federal law.  Given the prior rulings on the subject, including cases protecting the rights of sexual assault victims, *see Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998); *Stafford-Pelt v. State of Calif.*, No. C-04-00496 RMW, 2005 WL 1457782, at *5 (N.D. Cal. June 20, 2005), and documented Freedom of Information Act exceptions for victim and minor information, *see* Ark. Code Ann. § 12-18-104(a); § 9-27-309(j); § 16-90-1104(b), the law was clearly established.  Individual Defendants had fair notice of their violation of Plaintiff's rights.  Individual Defendants' assertion of statutory immunity is equally inapplicable.  The Arkansas Supreme Court has determined that statutory immunity applies only to negligence-based torts, not intentional torts as alleged here.  *See Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992); *City of Fayetteville v. Romine*, 373 Ark. 318, 320 S.W.3d 10 (2008). Federal courts are bound by the Arkansas Supreme Court's ruling on the matter, and Individual

Defendants' request for this Court to alter Arkansas Supreme Court's interpretation of Arkansas law must be rejected. *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("We are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law."). Moreover, statutory immunity applies except to the extent a negligence tort is covered by a liability policy. Ark. Code Ann. § 21-9-301(a). Individual Defendants bear the burden of demonstrating no liability policy exists or applies, but Defendants have failed to allege anything in this regard. *See Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46 (2009). Further, given that Plaintiff needs only allege facts establishing a plausible entitlement to relief, City Defendants' other allegations fail. The Complaint must be taken as a whole, not parsed allegation-by-allegation, as City Defendants attempt to do by ignoring whatever portions of the Complaint support the claims and highlighting those they allege do not. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). When viewed in its totality, the Complaint presents sufficient facts to survive a motion to dismiss. For the reasons set forth herein, City Defendants' MTD should be denied.

## II. RELEVANT FACTS

This case is about the failure of City Defendants and others to afford Plaintiff, as a minor, privacy rights established under the federal and state constitutions and Arkansas law. In December 2006, the Springdale Police Department initiated an investigation (the "Investigation") into allegations of a sexual nature involving Plaintiff who was then a minor. Compl. ¶ 43 et seq. In December 2006, as part of the Investigation, police investigators interviewed the alleged victims who were also minors at the time of the interviews, as well as their parents. *Id.* Plaintiff, his parents and the alleged victims were assured that pursuant to Arkansas law, their statements, taken at the Children's Safety Center in Washington County, Arkansas,

would remain confidential and could not be disclosed to the public. *Id.* ¶ 47. These interviews were documented in an official Offense Report maintained by City Defendants and an Incident Report maintained by Defendant Washington County. *Id.* ¶ 48. Following the interviews, the Springdale Police Department requested a Family In Need of Services ("FINS") case be opened and a FINS petition was filed by the Washington County prosecutor's office at the request of the Police Department. *Id.* ¶ 49.

Nearly ten years later, on or about May 15, 2015, City Defendants received a Freedom of Information Act ("FOIA") request from a law firm purporting to represent *In Touch* magazine. *Id.* ¶ 45. The request sought all files related to or mentioning Plaintiff, his parents, and any of the addresses purportedly related to their family. *Id.* The Washington County Sheriff's Office received a similar request. *Id.* ¶ 48. Seeking to capitalize on the potential for publicity, Defendant O'Kelley, then Chief of the Police Department, and Defendant Cate, Springdale City Attorney, hastily and improperly determined that the Offense Report and the information contained therein should be released to the public. *Id.* ¶¶ 53-57. Individual Defendants worked closely with the requesting law firm, which also had personal ties to Defendant O'Kelley, regarding the timing and redaction of the Offense Report. *Id.* ¶¶ 55-58. Individual Defendants failed to consult the Department of Human Services or other agencies prior to reviewing and approving the Offense Report for distribution on May 20, 2015. *Id.* ¶ 63.

In fact, on the following day, the Arkansas Municipal League and the Department of Human Services determined that the Individual Defendants had improperly released information in clear violation of the Arkansas Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions. *Id.* ¶ 63-64. Individual Defendants attempted to take back the Offense Report from *In Touch*, but their efforts were too late. *Id.* ¶ 65. Despite Defendant O'Kelley's belated request

4

for *In Touch* to delay publication of Offense Report, *In Touch* magazine posted a full copy of the thirty-three page Report on their website.  *Id.* ¶ 65.  Plaintiff was immediately subject to scrutiny on social media, in blogs, and through other media outlets.  *Id.* ¶¶ 66-68.  While some expressed concern for Plaintiff and his family, noting that it was readily apparent who was who in the Offense Report, others were less kind and chastised Plaintiff's family and their decision to forgive Plaintiff and other aspects of their lives.  *Id.* ¶¶ 66-69.

The very next day, Judge Stacey Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas ruled that the Offense Report should be destroyed in order to protect Plaintiff and the identity of the alleged victims, one of whom was still a minor.  *Id.* ¶ 71.  Judge Zimmerman pointed specifically to Arkansas Code Annotated section 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex crime."  *Id.*  Five days later, Judge Zimmerman issued another order ruling that the juvenile records, including the interviews of the minor children and the information about the alleged assaults, were not subject to FOIA disclosure under the "liberally construed" Arkansas Juvenile Code.  *Id.* ¶71.  Judge Zimmerman later sent a letter to Defendant Cate requesting information regarding the City's policy on release of juvenile records, reiterating that the Offense Report clearly put the reader, and the Springdale Police Department, on notice that a FINS petition was filed.

Plaintiff's Complaint clearly alleges that City Defendants, and in particular Defendants Cate as City Attorney and Defendant Sprouse, as Mayor, acted under color of state law and the customs, practices, and policies of the City of Springdale by overseeing and approving the Offense Report for distribution to the public.  The misconduct of City Defendants led to widespread publication of Plaintiff's private information in violation of specific Arkansas statutes

and the Arkansas and United States Constitutions.  Plaintiff, who was assured that the statements and information contained in the juvenile record would remain confidential, had a reasonable expectation of privacy of that information.  City Defendants' disclosures of the highly personal details of Plaintiff's juvenile case file constitute a clear and unwarranted invasion of Plaintiff's right and expectation of privacy and other rights, rights that were clearly established at the time the Offense Report was released.  City Defendants therefore can and should be held liable for the violation of Plaintiff's rights.

### III. LEGAL STANDARD

A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint.  "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (internal citations omitted).  The allegations in the complaint should be construed in favor of the pleader.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In addition, allegations must be viewed in their totality and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Villa v. Inter-Am Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality") and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("The inquiry [under the Private Securities Litigation Reform Act] is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.").  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  Taking the

Complaint as a whole, Plaintiff sets forth more than sufficient allegations to hold City Defendants accountable for their unlawful conduct in violation of Plaintiff's constitutional and state-law rights.

## IV. THE CAUSES OF ACTION AGAINST THE CITY DEFENDANTS SHOULD NOT BE DISMISSED

### A. Defendants Cate and O'Kelley are Not Entitled to Qualified Immunity From Plaintiff's Constitutional Claims.

Officers and municipal employees sued in their personal capacities are entitled to qualified immunity unless: (1) they violated a federal constitutional or statutory right belonging to plaintiffs; and (2) that right was clearly established at the time of the violation such that reasonable officials would have known that they were violating that right. *See Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012).   Courts have discretion which of the two prongs of the qualified immunity defense to analyze first, i.e., the "merits" question or the "clearly established" question. *Pearson v. Callahan*, 555 U.S. 223, 236-38 (2009).  "The defendants bear the burden to establish the relevant facts supporting qualified immunity, while [plaintiff] receives the benefit of all reasonable inferences." *Ingrassia v. Schafer*, 825 F.3d 891, 898 (8th Cir. 2016) (citing *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010)).  For the reasons set forth below, Individual Defendants have failed to meet their burden to establish qualified immunity as to Plaintiff's claims; therefore, the Court should deny City Defendants' MTD.

### i. Plaintiff has sufficiently pled a violation of their constitutional privacy rights by Defendants Cate and O'Kelley.

As Individual Defendants properly note, "to violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant breach of a pledge of confidentiality that was instrumental in obtaining the personal information."  MTD at 8 (citing

*Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (quoting *Alexander v. Peffer*, 993 F.2d 1348,

1350 (8th Cir. 1993)).  To determine whether a particular disclosure violates the Fourteenth

Amendment, the court will consider the nature of the material opened to public view to assess

whether the person had a legitimate expectation that the information would remain confidential

while in the state's possession.  *See Eagle*, 88 F.3d at 625.  The protection against public

disclosure of personal matters extends to "highly personal matters representing 'the most intimate

aspects of human affairs'" not just to disclosure of an individual's name.  *See Eagle*, 88 F.3d at

625 (quoting *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988)).  "'When the information is

inherently private, it is entitled to protection.'" *Id.* (quoting *Fraternal Order of Police, Lodge 5 v.

City of Phila.,* 812 F.2d 105, 116 (3d Cir. 1987).  Individual Defendants argue that Plaintiff failed

to sufficiently plead a violation of his constitutional rights because the information released in the

Offense Report does not establish a fundamental right to privacy.  Their argument relies on the

fact that the Offense Report was redacted such that it did not contain Plaintiff's name.  MTD at

10.  This argument, however, misconstrues the standard under the applicable law as well as the

facts as pled in Plaintiff's Complaint.  Individuals have a constitutional right to privacy with

respect to personal sexual matters and particularly with respect to facts concerning sexual crimes

committed against them.  *See e.g.*, *Eastwood v. Dep't of Corrections*, 846 F.2d 627, 631 (10th Cir.

1988) ("This constitutionally protected right [to privacy] is implicated when an individual is

forced to disclose information regarding personal sexual matters."); *see also Swope v. Bratton*,

541 F. Supp. 99, 108 (W.D. Ark. 1982) (concluding a person's private sexual activities "are

within the 'zone of privacy' and protected from unwarranted governmental intrusion").  This

constitutional right extends to "inherently private" information beyond just a victim's identity and

also includes the intimate details of a sexual assault.  *See Bloch v. Ribar*, 156 F.3d 673, 686 (6th

Cir. 1998) (concluding that a rape victim "has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape"); *Orff v. City of Imperial*, No. 17-cv-0116 W (AGS), 2017 WL 2537250, at *5 (S.D. Cal. June 12, 2017) (denying motion to dismiss Fourteenth Amendment privacy claim against police chief based on disclosure of sexual assault allegations because plaintiff "is a victim of a sexual assault [and] is entitled to privacy surrounding the details of that assault"); *Stafford-Pelt v. State of Calif.*, No. C-04-00496 RMW, 2005 WL 1457782, at *5 (N.D. Cal. June 20, 2005) (holding that plaintiff, "as the victim of a sexual assault when she was minor . . . had a legitimate expectation that the government officials would not arbitrarily release sensitive information about her allegations about her half-brother").  Not only do *Bloch*, *Orff*,  and *Stafford-Pelt* (and the authorities cited in those cases) together establish that Plaintiff had a legitimate expectation that City Defendants would not release sensitive information about allegations of molestation to news reporters, but that conclusion is reinforced by the various provisions of Arkansas state law.  *See Eagle*, 88 F.3d at 626 n. 3 (8th Cir. 1996) (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("[S]tate statutes and regulations may inform our judgment regarding the scope of constitutional rights…").

The Arkansas Child Maltreatment Act expressly states that any "data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq."  Ark. Code Ann. § 12-18-104(a).  As the Arkansas Attorney General has explained, while local law enforcement agencies are not expressly mentioned in the statute, "it is clear that sheriff's offices

and police departments are included as 'other entit[ies] authorized under [the Act] to perform investigations." Ark. Op. Atty. Gen. No. 2016-068.  Thus, all data created, collected, or compiled by local law enforcement involved in the investigation is protected from disclosure. *Id.* Similarly, the Arkansas Juvenile Code exempts certain records of juveniles who have been made the subject of proceedings before the juvenile court from disclosure under the Freedom of Information Act.  Ark. Code Ann. § 9-27-309(j).  Further, the Arkansas Code Annotated section 16-90-1104(b) protects victims of sex crimes from improper disclosure of public information directly or indirectly identifying them as victims of that crim.  Ark. Code Ann. § 16-90-1104(b). These statutes demonstrate that Arkansas has a valid state interest in protecting reports such as the one released by City Defendants from public dissemination, which in turn informs the scope of related constitutional rights. *See Eagle*, 88 F.3d at 626 n. 3.  Plaintiff's Complaint is clear that Defendants' release of the Offense Report violated his right to privacy not only by disclosing his identity and those of the alleged victims but also by revealing the highly intimate and humiliating details of those alleged assaults.  Moreover, it is a fact, not an opinion as Individual Defendants contend, that the Offense Report contained sufficient information from which the public could identify Plaintiff and the alleged victims listed in the Report.  Plaintiff's Complaint clearly alleges that numerous users on blogs and social media began identifying Plaintiff and his family as the subjects of the juvenile investigation and even provides an example of a post on the site "freejinger.com."  *See id.* ¶ 66.  The example provided is just one of numerous blog posts on that site noting that Plaintiff could be easily identified despite the redactions made to the Offense Report.  Such a conclusion is not, as City Defendants allege, based solely on Plaintiff's opinions and unsupported conclusory allegations.

In another attempt to misconstrue Plaintiff's Complaint, Individual Defendants argue that

their release of the Offense Report could not constitute a violation of Plaintiff's rights because

the news of the molestation was already published.  Individual Defendants rely on *McNally v.*

*Pulitzer Publishing Co.*, 532 F.2d 69, 79 (8th Cir. 1976), a case easily distinguishable from the

facts as alleged in Plaintiff's Complaint.  *See* MTD at 10.  In *McNally*, the defendants published

portions of plaintiff's confidential psychiatric report conducted while plaintiff was in prison.  532

F.2d at 78.  The majority of the report, including the summary conclusion that plaintiff suffered

from a severe personality disorder, had already been made part of the public record during a

mental competency hearing held at plaintiff's request.  *Id.*  Thus, the court concluded that the

"newspaper article contained little if anything not generally disclosed in open court."  *Id.*

In contrast here, the information released by Individual Defendants was categorically different

than what had been previously published by *In Touch Weekly*.  While it is true that *In Touch*

*Weekly* published an article revealing that Plaintiff had been investigated for sexual assault, that

article addressed information entirely different from the information later disclosed by Individual

Defendants.  *See* Compl. ¶ 50.  The article did not reveal the identity of the alleged victims nor

any other specific details of the alleged molestations, including the number of alleged victims,

their relationship to Plaintiff, or even that they were all minor females at the time of the incidents.

It is those specific details, not merely the fact of the Investigation, that Plaintiff alleges were not

part of the public record and form the basis of their constitutional privacy claims.  Finally,

Individual Defendants' argument that Plaintiff's allegations against Washington County shield the

Individual Defendants from liability wholly ignores the facts alleged in the Complaint and the

applicable standard on a motion to dismiss.  Individual Defendants cite no cases in support of this

argument, nor could they.  Individual Defendants point only to a single paragraph from Plaintiff's

introduction, which they claim concedes that the information revealed in Washington County's

under-redacted Incident Report permitted the public to identify the alleged victims of Plaintiff. MTD at 10. They claim that this accusation against the County is somehow "fatal" to Plaintiff's claims against the Individual Defendants. *Id.* However, when ruling on a motion to dismiss, courts must consider the complaint in its entirety, not merely individual allegations in isolation, to determine whether the plaintiff has stated facts sufficient to plead a claim. *See, e.g.*, *Braden*, 588 F.3d at 594 ("Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The fact that Plaintiff failed to mention Individual Defendants in a paragraph about County Defendants does not overshadow the numerous allegations that specifically tie Plaintiff's injuries to Individual Defendants' actions. *See* Compl. ¶¶ 49, 53-55, 65-66. This argument is without merit, and Plaintiff has sufficiently stated his constitutional claims against Individual Defendants.

### ii. The law prohibiting the release of Plaintiff's personal information was clearly established at the time of the release of the Offense Report.

Individual Defendants also claim that they are entitled to qualified immunity because there is no controlling case law evaluating whether officials may properly release documents relating to an investigation of molestation of a juvenile. MTD at 12. However, the Eighth Circuit has "taken a broad view of what constitutes 'clearly established law' for purposes of a qualified immunity inquiry." *See Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 902 (8th Cir. 2007) (quoting *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000)). The relevant inquiry is not "a hunt for prior cases with precisely the same facts" but rather "whether the official had fair notice her conduct was unconstitutional." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). There need not be a specific case on point for the law to be clearly established. *See De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017). Rather, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."

12

*Norfleet by Norfleet v. Ark. Dep't of Human Servs.*, 796 F. Supp. 1194, 1198 (citing

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   Contrary to Individual Defendants' assertions,

as explained previously, the law governing disclosure or reports regarding victims of sexual abuse

was "clearly established" at the time the Offense Report was released.  *See Bloch*, 156 F.3d at 686;

*Orff*, 2017 WL 2537250, at *5; *Stafford-Pelt*, 2005 WL 1457782, at *5.   Given the existing

constitutional authority, every reasonable official would have and could have known that the

Offense Report, even if redacted, would violate Plaintiff's rights.   Individual Defendants,

therefore, are not entitled to qualified immunity. Individual Defendants further contend that

Arkansas law favoring disclosure under FOIA is clear and unambiguous and they are therefore

entitled to qualified immunity for releasing the Offense Report in support of these principals.   MTD at

13-14.   Plaintiff does not disagree that Arkansas FOIA law favors disclosure in this instance.

However, equally clear and unambiguous under Arkansas law is the ability of the Arkansas General

Assembly to create exemptions from FOIA.  Ark. Code Ann. § 25-19-110; *Hopkins v. City of*

*Brinkley*, 2014 Ark. 139, 432 S.W.3d 609 (2014).   Through the language in the Arkansas Child

Maltreatment Act, the Arkansas Juvenile Code, and statutes protecting the rights of victims of sex

crimes, the Arkansas General Assembly expressly protected from public dissemination information

related to minors and victims of sex crimes.  *See* Ark. Code Ann. § 12-18-104(a); § 9-27-309(j); §

16-90-1104(b).   The express purpose of the Arkansas Child Maltreatment Act is to "preserve the

confidentiality of all records in order to protect the rights of the child and of the child's parents or

guardians." Ark. Code Ann. § 12-18-102(5).   To that end, the Child Maltreatment Act provides in

relevant part that "data, records, reports, or documents that are created, collected, or compiled by

or on behalf of the Department of Human Services, the Department of Arkansas State Police, or

other entity authorized under this chapter to perform investigations or provide services to

children, individuals, or families shall not be subject to disclosure under the Freedom of

Information Act of 1967, § 25-19-101 et seq." Ark. Code Ann. § 12-18-104(a). Thus, the

language of the Child Maltreatment Act creates a clear exemption from the broad disclosure rules

under FOIA. Individual Defendants claim that there was uncertainty regarding whether these

provisions of the Child Maltreatment Act applied to the Offense Report. When evaluating FOIA

exemptions, the court must balance the interest between disclosure and non-disclosure using a

"common-sense" approach. *See ADFA v. Pharmacy Assoc.*, 333 Ark. 451, 970 S.W.2d 217, 2019

(1998). Under a "common-sense" approach, it is clear that the Offense Report was exempt from

disclosure under the Child Maltreatment Act. As noted previously, local law enforcement

agencies such as the Springdale Police Department are authorized under the Child Maltreatment

Act to conduct child maltreatment investigations. *See* Ark. Code Ann. § 12-18-106 (referencing a

"coordinated multidisciplinary team approach to intervention" regarding maltreatment, including

involvement of law enforcement agencies); *see also*, § 12-18-616 (indicating investigations under

this chapter may be "conducted by the Department of Human Services and the Department of

Arkansas State Police, *or local law enforcement*") (emphasis added). Moreover, while the

interviews reported in the Offense Report were conducted prior to the institution of a FINS

proceeding, a FINS case was eventually opened at the request of the Police Department as is

indicated in the Report itself. *See* Compl. ¶¶ 5, 49. Common sense would indicate that a report

explicitly stating that a FINS petition was submitted on the basis of the interviews and facts

contained in the report would be included in the FOIA exemption. Further, Arkansas Code

Annotated section 16-90-1104(b) specifically exempts from disclosure to the public any

"information directly *or indirectly* identifying the victim of a sex crime." Ark. Code Ann. § 12-

18-104(a) (emphasis added). While section 16-90-1104(b) does not expressly mention FOIA, the

law was clear at the time of the release of the Offense Report that section 16-90-1104(b)

established an exemption to FOIA.  *See* Ark. Op. Atty. Gen. No. 2009-173 (citing John J. Watkins

& Richard J. Peltz, *The Arkansas Freedom of Information Act*, 221 n. 549 (4th ed., m & m Press

2004) ("Because subsection 16-90-1104(b) specifically provides for nondisclosure 'to the public,'

it likely amounts to a FOIA exemption under the first of the above two subsets.").  Here, as noted

above, the Individual Defendants released a report that permitted members of the public to

identify Plaintiff and his family as the minors referenced in the report, including details about their

likes and dislikes, schooling, names of their parents, the family's current address, which notably

was not the location of any of the molestations.  *See* Compl. ¶¶ 57, 71.

In addition, contrary to Individual Defendants' assertions, the Arkansas Juvenile Code applies

to the Offense Report.  The Arkansas Juvenile Code is to be "liberally construed" to assure that all

juveniles brought to the attention of the court receive guidance, care, and control which will take into

account the best interests of the emotional, mental, and physical welfare of the juvenile and the best

interests of the state.  Ark. Code Ann. § 9-27-302(1).  Individual Defendants allege that the Juvenile

Code does not apply in part because there are no allegations that Plaintiff was a juvenile at the time of

the Investigation and there are no allegations he was detained or arrested.  MTD at 17.  However, the

Juvenile Code defines "juvenile" to include an individual who is under the age of 18 or who was,

prior to the age of 18, "a juvenile member of a family in need of services."  Ark. Code Ann. § 9-27-

303(32)(B).  Further, the Juvenile Code protects records of juveniles that have been arrested, detained,

or "otherwise been made the subject of a proceeding before the juvenile court, by the filing of a

petition with the court, pursuant to A.C.A. § 9-27-310."  *See* Ark. Op. Atty. Gen. No. 2003-157.  The

Complaint clearly alleges that the alleged victims were minors at the time the Offense Report was

created and the FINS Petition was filed on the basis of a FINS affidavit from the Springdale Police

Department.  *See* Compl. ¶¶ 2-5, 49.  The obviousness of these violations is made clear by Judge

Zimmerman's order that the Offense Report be kept confidential, which was issued just one day

after Individual Defendants released the Report.  *See* Compl. ¶¶ 69-70.  Similarly, the Arkansas

Municipal League and the Department of Human Services determined almost immediately that

the Individual Defendants had improperly released information in clear violation of the Arkansas

Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions.  *Id.* ¶ 62.

Considering these facts, Individual Defendants' arguments that the law was not clearly established

are without merit.   In his Complaint at ¶64, Plaintiff inadvertently identified the Arkansas

Department of Human Services as the Arkansas Department of Health Services.  Finally, noting

that the Arkansas statutes do not create a private right of action, Individual Defendants erroneously

assert that any alleged violations of the Arkansas statutes, clearly established or not, cannot amount

to constitutional violations.  However, state statutes, while not dispositive, can inform the boundaries

of constitutional rights.  *See Eagle*, 88 F.3d at 626 n. 3 (quoting *Nilson*, 45 F.3d at 372).  Further,

even if these Arkansas statutes purported to provide immunity or protection from suit, "conduct that

is wrongful under section 1983 cannot be immunized by state law."  *Norfleet*, 796 F. Supp. at 1201

(citing *Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980)).  Because the law regarding disclosure

of the Offense Report was clearly established both under Due Process privacy case law and under

Arkansas state law, Individual Defendants are not entitled to qualified immunity.

**B. The Springdale Defendants are Not Entitled to Statutory Immunity From Plaintiff's Tort Claims.**

Section 21-9-301(a) of the Arkansas Code Annotated provides statutory immunity for

municipal entities in certain situations.  As section 21-9-301(a) is an affirmative defense, City

Defendants bear the burden of demonstrating immunity applies.  *See Vent v. Johnson*, 303 S.W.3d

46, 2009 Ark. 92 (2009).  The Individual Defendants' arguments that they are immune from liability

against Plaintiff's Arkansas tort claims pursuant to Arkansas Code Annotated section 21-9-301(a)

and Arkansas Supreme Court precedent ignore key aspects of the statute and the case law and

therefore fail to meet their burden of proof.  First, by Springdale Defendants' own admission, the

Arkansas Supreme Court repeatedly has held that section 21-9-301 applies only to negligence

actions, not intentional torts, as alleged in Plaintiff's Complaint.  *See* MTD at 19 (citing *Deitsch v.*

*Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)).  Second, section 21-9-301 is not a complete shield

from liability and applies "except to the extent [the claims] are covered by liability insurance." Ark.

Code Ann. § 21-9-301.  As explained in more detail below, City Defendants are not entitled to

statutory immunity under section 21-9-301 of the Arkansas Code Annotated.

### i. Section 21-9-301 Does Not Apply to The Intentional Torts Alleged in Plaintiff's Complaint.

Individual Defendants concede that the "Arkansas Supreme Court has held that § 21-9-

301 only immunizes cities and city officials from negligence actions."  MTD at 19 (citing

*Deitsch*, 309 Ark. 401, 833 S.W.2d 760); *see also City of Fayetteville v. Romine*, 373 Ark. 318,

284 S.W.3d 10 (2008) ("This court has consistently held that § 21-9-301 provides city employees

with immunity from civil liability for negligent acts, but not for intentional acts.").  Nevertheless,

Individual Defendants request that the Court extend immunity under section 21-9-301(a) to all

torts based on the language and the policy reasons behind the state statute.  MTD at 18.  They

contend that they cannot be liable for intentional torts under section 21-9-301 "because it is clear

that the Arkansas General Assembly intended municipalities and their employees to be entitled to

immunity for *all* torts under this statute."  MTD at 18.

However, the Supreme Court of Arkansas, and not the federal district courts, has the final

word as to the meaning of a state statute.  *See Davis v. City of Little Rock, Ark.*, 136 F. Supp.

725, 729 (E.D. Ark. 1955) ("[T]he Supreme Court of Arkansas . . . has the final word as to the

meaning of [the state statute], which we do not."); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("We are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law.").  Where, as here, the Arkansas Supreme Court has spoken on the issue, the district court is bound by the meaning of that interpretation.  *Curtis Lumber*, 618 F.3d at 771; *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009) ("Our duty is to conscientiously ascertain and apply state law, not to formulate new law based on our own notions of what is the better rule.").  In an attempt to circumvent the Arkansas Supreme Court's rulings, the Individual Defendants note that section 21-9-301 has not been consistently applied by the Arkansas courts.  MTD at 19-20.  City Defendants rely almost entirely on cases, including federal district court cases, which pre-date the Arkansas Supreme Court's rulings in *Dietsch* and *City of Fayetteville*.  *See* MTD at 19-20 (citing cases from 1978, 1988, 1989, and 1990).  The two more recent cases, *City of Alexander v. Doss*, 102 Ark. App. 232, 284 S.W.3d 74 (2008) and *Brooks v. Hallum*, 2010 Ark. App. 193, 374 S.W.3d 152 (2010), were decided by the Arkansas Court of Appeals, not the Arkansas Supreme Court.  While intermediate state court appellate rulings may serve as persuasive authority when they are the best evidence of state law, they are not binding on federal courts.  *See Torn v. Int'l Bus. Machines, Inc.*, 101 F.3d 70, 74 (8th Cir. 1996).  Moreover, district courts should not follow intermediate state appellate court opinions when there is evidence that the state Supreme Court has ruled otherwise.  *See Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (holding a federal court may disregard a lower state court opinion if it is convinced by other persuasive data that the highest court of the state would decide otherwise).  Defendants point to no Arkansas Supreme Court cases following *Dietsch* or *City of Fayetteville* ruling that section 21-9-301 applies to intentional torts.  City Defendants, therefore, have failed to demonstrate that section 21-9-301 should apply to the intentional torts alleged in Plaintiff's

Complaint.

### ii. Springdale Defendants Have Not Met Their Burden of Demonstrating No Liability Coverage Exists As Required To Invoke Complete Section 21-9-301 Immunity.

Arkansas Code Annotated section 21-9-301 clearly states that municipal corporations and their subdivisions are immune from suits for damages "except to the extent they may be covered by liability insurance." Ark. Code Ann. § 21-9-301(a). Plaintiff is not required at the pleading stage to allege the absence of insurance in order to sufficiently allege a cause of action. *See Vent*, 303 S.W.3d 46, 2009 Ark. 92. Instead, defendants bear the burden of demonstrating that no liability coverage exists for the relevant claims in order to prove that section 21-9-301's immunity applies. *Id.* ("We disagree and hold that the qualified immunity afforded by section 21-9-301 must be asserted and proven as an affirmative defense."); *see also Clark v. City of West Memphis, Ark.*, 2007 WL 215580, at *4 (E.D. Ark. Jan. 25, 2007) (denying defendants' motion for summary judgment based on section 21-9-301 immunity where defendant did not demonstrate the applicability of the insurance coverage exception or whether or not there is such coverage); *Helena-West Helena Sch. Dist. v. Monday*, 361 Ark. 82, 87, 204 S.W.3d 514 (2005) ("The District may be immune from liability but, because it had the burden to make the insurance policy a part of the record, and failed to do so, this court cannot make that determination."). Nowhere in the MTD do Individual Defendants allege the existence or lack of an insurance policy that would apply to Plaintiff's tort claims. Therefore, even assuming section 21-9-301(a) immunity applied to Plaintiff's intentional tort claims, Individual Defendants have not met their burden of asserting and proving this affirmative defense. Accordingly, Individual Defendants are not entitled to dismissal of Plaintiff's tort claims against them on the basis of section 21-9-301(a) immunity.

**C. Plaintiff Has Alleged Sufficient Facts To Establish A Section 1983 Claim Against the City of Springdale.**

Under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978), a municipality like the City of Springdale is "a person" that can be subject to liability under section 1983.  Section 1983 liability will "attach to a municipality if the violation resulted from (1) an 'official municipal policy,'; (2) an unofficial 'custom'; or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted).  Plaintiff has previously addressed the issue of constitutional violations above sufficient to challenge Separate Defendants' allegations of a failure to plead a Constitutional violation.  Where no written policy is a "moving force" behind allegedly unconstitutional conduct, section 1983 liability may also be imposed where that conduct was committed or ratified by a person who has "final policymaking authority" for the municipality as both Defendants Sprouse, as Mayor and chief executive of the City, and Cate, as City Attorney, certainly were. *See id*.  Courts consider two primary sources when determining if a particular individual holds "final policymaking authority": (1) state and local positive law; and (2) state and local "custom of usage having the force of law."  *Id.* at 1215 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  Whether an individual is a final policymaker for purposes of section 1983 liability is a question of state law.  *Id.* at 1214-1215 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). The City of Springdale contends that Plaintiff has failed to state a claim in part because Individual Defendants are not final policymakers.  While Plaintiff concedes that Defendant O'Kelley was not a policymaker of the Springdale Police Department, the City of Springdale's FOIA policy makes clear that the City Attorney, here Defendant Cate, has final policymaking authority concerning FOIA-request responses as is Defendant Sprouse as chief executive.   The Springdale City

Council, which sets forth the policy for the City, has delegated its policy-making powers to the

City Attorney with regards to FOIA determinations thereby making Defendant Cate an individual

with "final policymaking authority."  Under Springdale Code § 2-86, the city attorney shall advise

the city council or any committee or member thereof, the mayor, and the heads of all departments,

and through the mayor and heads of departments, all other officers or officials of the city upon any

and all legal questions affecting the city's interest."  Notably, City policy provides:

> The department head shall supply any information to the media which is subject
> to disclosure under the Arkansas Freedom of Information Act. Any time the
> media or other party requests records or other information from the City, the
> department head, if unsure whether or not the record/information is subject to
> disclosure under the Arkansas Freedom of Information Act, shall immediately
> refer the request to the City Attorney's Office, who shall confer with the
> department head on the action to be taken. The Mayor's office shall also be
> notified.

Springdale Personnel & Procedures Manual, § 3.7.  That manual was drafted and adopted by

Resolution of the Springdale City Council "as its official document of personnel policies and

procedures."  Defendants Cate and Sprouse, therefore, are final policymakers charged with

determining whether the redacted Offense Report could appropriately be released in response to

the FOIA requests.

Nevertheless, the City of Springdale argues that Plaintiff has alleged no custom, policy, or

practice.  MTD at 24-25.  However, under certain circumstances, "municipal liability may be

imposed under 42 U.S.C.A. § 1983 for a single decision by municipal policymakers."  *Pembaur*

*v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  Further, "an unconstitutional government policy

could be inferred from a single decision taken by the highest officials responsible for setting

policy in that area of the government's business."  *City of St. Louis v. Praprotnik*, 485 U.S. 112,

123 (1988).  Plaintiff has alleged sufficient facts to demonstrate a policy or practice.  As

explained previously, Plaintiff has alleged sufficient facts to prevail on their claims against

Individual Defendants, thereby opening the door to holding the City of Springdale liable under *Monell*.  Moreover, Plaintiff has alleged, based on emails received through FOIA requests, that Defendants Cate and Sprouse were intimately involved in the decision to disclose the Offense Report, and in related redaction decisions.  *See* Compl. ¶¶ 8, 56-57, 63-64.  In particular, Plaintiff alleges that Defendant Cate, in his capacity as the City Attorney, "approved the redacted Offense Report for public distribution" and that he advised the Springdale Police Department to consult with Carolyn Witherspoon, who was with the law firm requesting the documents regarding the redacted report.  *Id.* ¶ 57.  Pursuant to the City of Springdale's official policies, the decisions of Defendants Sprouse and Cate with respect to the release of the Offense Report constituted the City's official policy on the matter.

That Defendants Sprouse and Cate were policymakers is further demonstrated by correspondence from Judge Zimmerman, who, just one week after the release of the Offense Report, sent Defendant Cate a letter inquiring about the City Attorney's policy on the release of the juvenile records.  After receiving no response, Judge Zimmerman followed with a second letter expressly asking Defendant Cate "Mr. Cate, what is your *policy* on releasing police reports in FINS juvenile cases in which a law enforcement officer from your department requests, by Affidavit with policy report included, that the Washington County Prosecutor file a FINS case and the case is indeed filed?"  It is clear that Defendant Cate was the official policymaker with respect distribution of juvenile records and Springdale Police Department records in relation to FOIA.  Thus, City Defendants' motion to dismiss this claim should be denied.

### D. Plaintiff Has Sufficiently Pled Intentional Torts Under Arkansas Law

#### i. Plaintiff has alleged facts sufficient to support a claim for the tort of outrage.

To establish a claim for outrage, a plaintiff must demonstrate the following elements:  (1)

the actor intended to inflict emotional distress or knew or should have known that emotional

distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond

all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the

actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress

sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548, 554-55 (2012). City

Defendants analogize the facts here to *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 600 F. Supp. 2d 1011,

1022 (W.D. Ark. 2009), a case that is factually distinguishable from the present case.  The type of

conduct that meets the standard for an outrage claim is evaluated on a case-by-case basis.

*McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583, 585 (Ark. 1998).  In *Wolfe*, the court

dismissed a student's claim for outrage against the school district because the district's alleged

failure to adequately respond to complaints of bullying from other students were not outrageous

and could not be directly attributed to the district.  *Wolfe*, 600 F. Supp. 2d at 1022-23.

Conversely, here, the City Defendants' direct, intentional actions led to what was essentially a

victimization of Plaintiff and a re-victimization of members of his immediate family, all minor

subjects of the investigation of alleged sex offenses, on a national stage.  *See* Compl. ¶¶ 67-69.

Moreover, in *Wolfe*, the information revealed concerning the bullying included information that

was not necessarily protected from disclosure.  In contrast, City Defendants disclosed a report, the

entirety of which was protected under Arkansas law.  Here, Plaintiff was the subject of a juvenile

investigation and City Defendants' intentional disclosure of such protected information was

outrageous, outside the bounds of decency, and caused Plaintiff severe emotional distress.  The

nature of the information revealed coupled with the unique nature of the tort of outrage analysis

demonstrate that City Defendants' arguments are unpersuasive.  Their motion to dismiss this claim

should be denied.

### ii. Plaintiff has sufficiently alleged a claim for invasion of privacy – public disclosure of private facts.

The tort of public disclosure of private fact "recognizes a cause of action in publicity, of a highly objectionable kind, given to private information about a plaintiff even though it is true and no defamation action would lie." *Williams v. Am. Broad. Co., Inc.*, 96 F.R.D. 658, 669 (W.D. Ark. 1983). City Defendants contend that Plaintiff failed to state a claim for public disclosure of private fact because *In Touch Weekly* had published a story about the investigation prior to the Offense Report's release and the "element of lack of public knowledge cannot be met." MTD at 32. As discussed previously, however, the initial *In Touch Weekly* article addressed only the bare facts that Plaintiff had been investigated in relation to molestation accusations made while he was a minor. The story did not reveal any the information at the heart of this lawsuit. It revealed nothing about the alleged victims or the details of the alleged sexual contact as that information was not yet known to the public or part of the public record. While a prior publication related to the investigation is certainly relevant, it is not the only factor considered by the courts when evaluation of whether facts are of legitimate public concern. The court should also consider "the social value of the fact published," "the depth of the intrusion into (plaintiff)'s private affairs," the state's interest in preventing disclosure, and whether fact publicized "concerned events that occurred in the past." Ark. Model Jury Instr., Civil AMI 422. Arkansas has an established state interest in preserving the confidentiality of records to protect rights of children and victims. *See* Ark. Code Ann. § 12-18-102(5); § 16-90-1104(b). This is particularly true where a sex offense is alleged. *See People v. Ramirez*, 55 Cal. App. 4th 47, 53 (1997) ("There can be little dispute that the state's interest in protecting the privacy of sex offense victims is extremely strong and fully justified."). The events disclosed took place over eight years prior to

24

their release by City Defendants, reducing any likelihood of an ongoing public safety public concern.  Further, although Plaintiff may have had some "notoriety," that fact does not prevent him from seeking protection against public disclosure of the most intimate details of the most traumatic experiences of his life.  *See* John J. Watkins, *The Privacy Tort: An Arkansas Guide*, 1993 Ark. L. Notes 91, 98 (1993) ("Despite having a significantly reduced zone of privacy, however, such public figures obviously cannot be considered fair game with respect to financial information, sexual relationships, and other intimate details of their private lives.")  City Defendants also erroneously cite to *Bartnicki v. Vopper*, 532 U.S. 514, 121 S. Ct. 1753 (2001) to argue that they are shielded from liability because the information published was truthful and lawfully obtained.  MTD at 32.  City Defendants conveniently overlook the fact that the Court did not extend protection to one who was involved in the initial illegal obtaining or revealing of the information.  *See Bartnicki*, 532 U.S. at 525 (noting that defendants played no part in the illegal acquiring or accessing of the information).  In contrast to *Bartnicki*, City Defendants were intimately involved in releasing the information.  Plaintiff has alleged sufficient facts to bring a claim for invasion of privacy for public disclosure of private facts.  City Defendants' motion to dismiss against this claim should be denied.

### iii. Plaintiff's Complaint sufficiently alleges the tort of invasion of privacy – intrusion upon seclusion.

To prove intrusion upon seclusion under Arkansas law, a plaintiff must establish:

i. The defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that he lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act;

ii. The intrusion was of the kind that would be highly offensive to a reasonable person; put differently, the intrusion is the result of conduct to which a reasonable person would strongly object;

iii. The plaintiff conducted herself in a manner consistent with an actual expectation of privacy; and

iv. The defendant's inclusion was the proximate cause of the plaintiff's damages.

*See Coombs v. J.B. Hunt Transport, Inc.*, 388 S.W.3d 456, 460-461 (Ark. Ct. App. 2012); Ark. Model Jury Instr., Civil AMI 420.  City Defendants contend that there are no allegations in Plaintiff's Complaint that City Defendants intruded upon Plaintiff's solitude or seclusion.  The Complaint clearly alleges that City Defendants' disclosure of the Offense Report revealed previously-unknown facts to the general public thereby infringing upon Plaintiff's rights to be left alone.  Compl. ¶¶ 57, 60-63, 66-68.  "Intrusion" is not limited to intrusions into plaintiffs' physical space; it includes invasion of the physical realm as well as infringement upon a person's emotional sanctum and the notions of civility and personal dignity.  *Coombs*, 388 S.W.3d at 461; *see also Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (applying Arkansas law; holding employer's use of an employee's medical authorization from a workers' compensation form "left little doubt that [the employer] intruded" upon employee's seclusion).  Similarly, here, revealing of the Offense Report was an intrusion upon the Plaintiff's emotional sanctum and personal dignity even though it involved no physical intrusion of personal space.  Again, City Defendants highlight only piecemeal portions of Plaintiff's Complaint, claiming that the Complaint contains no allegations that City Defendants believed or were substantially certain that they lacked the necessary legal authority to release the report.  While Plaintiff alleges that City Defendants released the Offense Report pursuant to a FOIA request, Plaintiff does not allege that City Defendants acted under the belief they were authorized to release the records.  Rather, Plaintiff alleges that City Defendants acted out of a desire for publicity for their Police Department, regardless of applicable Arkansas law.  In paragraph 55, for example, Plaintiff alleges that City Defendants were aware that releasing of the Offense

Report without the lurid details of the assaults or the victims' identifying details would not have satisfied the media even though such details were prohibited from disclosure under Arkansas law.  Compl. ¶ 55.  City Defendants' argument that they made no promise of confidentiality to Plaintiff or his family is irrelevant as the Offense Report was protected from disclosure under Arkansas law regardless of such pledge.  *See* Section IV(A)(i), infra.  Moreover, the fact that Plaintiff and his family were acting under the belief that the Offense Report would be kept private as a result of that promise, whether from the State Police or the City Defendants, is further proof that Plaintiff and his family conducted themselves in a manner consistent with an actual expectation of privacy.  Thus, Plaintiff has alleged sufficient facts to bring a claim for invasion of privacy – intrusion upon seclusion.

## V. CONCLUSION

For the reasons articulated above, City Defendants' motion to dismiss should be denied.

Respectfully submitted,

STORY LAW FIRM, PLLC


By___/s/ Travis W. Story_____
Travis W. Story (2008274)
Gregory F. Payne (2017008)
438 E. Millsap, Suite 103
Fayetteville, AR  72703
(479) 443-3700
Fax (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

ATTORNEYS FOR PLAINTIFF



**CERTIFICATE OF SERVICE**

I, Travis W. Story, do hereby certify that on the 25th day of August, 2017, a true and correct copy of the above and foregoing Response to Motion to Dismiss was filed with the Clerk via the CM/ECF system, which will send notification of filing to the following:

Robert Justin Eichmann
Harrington Miller Neihouse Kieklak PA
113 E. Emma Ave/P.O. Box 687
Springdale, AR 72764
jeichmann@arkansaslaw.com

Susan Keller Kendall
Kendall Drewyor Law Firm
3706 Pinnacle Hills Parkway, Suite 201
Rogers, AR 72758
skk@kendalllawfirm.com

Thomas N. Kieklak
Harrington, Miller & Kieklak, P.A.
113 E. Emma Ave/ P.O. Box 687
Springdale, AR 72765-6765
tkieklak@arkansaslaw.com

Cynthia W. Kolb
Cross, Gunter, Witherspoon & Galchus, P.
500 President Clinton Ave, Suite 200
Little Rock, AR 72201
ckolb@cgwg.com

Elizabeth Anne McNamara
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
lizmcnamara@dwt.com

Jamie Somoza Raghu
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
jamieraghu@dwt.com

Jason E. Owens
Rainwater, Holt & Sexton, P.A.
P.O. Box 17250
Little Rock, AR  72222-7250
(501) 868-2500

Fax (501) 868-2505
owens@rainfirm.com

Edwin Lee Lowther, Jr.
Wright Lindsey Jennings LLP
200 West Capitol Avenue
Suite 2300
Little Rock, AR  72201
(501) 371-0808
Fax (501) 376-9442
elowther@wlj.com

                                         Travis W. Story
                                         Travis W. Story