## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT ARKANSAS
## FAYETTEVILLE DIVISION

------------------------------------------------------------ x

JOSHUA DUGGAR,

                   Plaintiff,

         - against -

CITY OF SPRINGDALE, ARKANSAS;
WASHINGTON COUNTY, ARKANSAS; THE
STATE OF ARKANSAS DEPARTMENT OF
HUMAN SERVICES; DOUG SPROUSE, in his
official capacity; KATHY O'KELLEY, in her
official and individual capacities; ERNEST
CATE, in his official capacities; RICK HOYT, in
his official capacities; STEVE ZEGA, in his
official capacity; BAUER PUBLISHING
COMPANY, L.P.; BAUER MAGAZINE, L.P.;
BAUER MEDIA GROUP, INC.; BAUER, INC.;
HEINRICH BAUER NORTH AMERICA, INC.;
BAUER MEDIA GROUP USA, LLC; CROSS,
GUNTER, WITHERSPOON & GALCHUS,
P.C., and DOES 1-10, inclusive,

                   Defendants.

------------------------------------------------------------ x

Civil Action No.: 17 Civ. 5125 (TLB)

## REPLY TO PLAINTIFF'S OPPOSITION TO BAUER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The Bauer Defendants[1] hereby submit this memorandum of law in further support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the Complaint and reasonable expenses, including attorneys' fees, resulting from Plaintiff filing this action pursuant to Arkansas Code Ann. § 16-63-506.

## INTRODUCTION

On this motion, the Bauer Defendants set forth the controlling and unequivocal United States Supreme Court precedent, *and* Arkansas' own controlling Supreme Court precedent holding that when the press lawfully obtains truthful, newsworthy information – like the Offense and Incident Reports at issue here that were released to Bauer Magazine under FOIA – its publication cannot be prohibited or punished consistent with the First Amendment.  *See Florida Star v. B.J.F.*, 491 U.S. 524, 532 (1989); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975); *Whiteside v. Russellville Newspapers, Inc.*, 295 S.W.3d 798, 801 (Ark. 2009), *cert. denied*, 130 S. Ct. 247 (2009).  This basic principle ends this action, plain and simple.  Thus, perhaps understandably, Plaintiff's opposition just ignores this dispositive law and instead resorts to an already refuted argument:  because he claims it was unlawful for the City and County Defendants to *disclose* the Reports to Bauer Magazine, the *publication* of those Reports is also unlawful.  Yet, *Florida Star* squarely rejected this same false equation.  In short, while Plaintiff can ignore reality, he cannot ignore the consequences of this reality.  The law dictates the dismissal of this action.

This Court need go no further than this controlling Constitutional law that requires dismissal of this action.  But, independent of this fundamental principle, the action fails because Plaintiff does not plausibly allege claims for invasion of privacy and outrage.  Once again,

---

[1] This memorandum uses the same defined terms as used in the Bauer Defendants' motion to dismiss (ECF Dkt. No. 40).

Plaintiff simply ignores and fails to rebut the arguments raised by the Bauer Defendants in their motion to dismiss that Plaintiff's (1) public disclosure of private facts claim fails because the Articles address matters of public concern and Plaintiff's admitted assaults were well known within his church community; (2) appropriation claim fails because the Articles are newsworthy, not commercial speech; (3) intrusion claim fails because the alleged actions did not amount to actionable intrusion, such as a physical intrusion on Plaintiff's space, nor were the Bauer Defendants "substantially certain" that they lacked the legal right to publish; and (4) outrage claim fails because publishing information obtained directly from the police does not begin to rise to the level of conduct required for such a claim.

Finally, by its plain language, Arkansas' Anti-SLAPP statute applies to Plaintiff's claims and requires their dismissal. Ark. Code Ann. §§ 16-63-501 *et seq*. The Articles are protected from civil liability under Section 504 as they plainly involve an act "in furtherance of the right to free-speech." Similar Anti-SLAPP statutes, including one that Arkansas expressly modeled its statute on, are applied to news reports protecting publishers from liability. Because Plaintiff has not properly verified his claims, and has made no attempt to argue that his claims could be verified in compliance with the Anti-SLAPP statute, they must be dismissed. For these multiple and independent reasons, as well as those reasons identified in the Bauer Defendants' motion to dismiss, Plaintiff's claims should be dismissed.

## ARGUMENT

**I.      PLAINTIFF IGNORES THE UNBROKEN LINE OF SUPREME COURT PRECEDENT ESTABLISHING THAT THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST THE BAUER DEFENDANTS NOTWITHSTANDING WHETHER THE CITY OR COUNTY DEFENDANTS ACTED PROPERLY IN DISCLOSING THE REPORTS**

It has been uniformly recognized through decades of Supreme Court precedent and lower court decisions that when the press lawfully obtains truthful, newsworthy information its

publication cannot be prohibited or punished.  *See Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97,

102-03 (1979) ("Our recent decisions demonstrate that state action to punish the publication of

truthful information seldom can satisfy constitutional standards . . . . if a newspaper lawfully

obtains truthful information about a matter of public significance then state officials may not

constitutionally punish publication of the information, absent a need to further a state interest of

the highest order.").  *See also Florida Star*, 491 U.S. at 532; *Landmark Commc'ns, Inc. v.

Virginia*, 435 U.S. 829, 837-38 (1978); *Cox Broad. Corp.*, 420 U.S. at 492; *C.L., M.L. ex rel.

C.A.L. v. Vill. Of Riverside*, No. 13 Civ. 1476, 2013 WL 4538836, at *2 (N.D. Ill Aug. 27, 2013);

*Gates v. Discovery Commc'ns, Inc.*, 101 P.3d 552, 562 (Cal. 2004); *Star-Telegram, Inc. v. Doe*,

915 S.W.2d 471, 471 (Tex. 1995); *Fann v. City of Fairview, Tenn.*, 905 S.W.2d 167, 172 (Tenn.

Ct. App. 1994).

　　　　Plaintiff makes no real effort to address, let alone distinguish, this controlling law.[2]

Instead, Plaintiff first resorts to the very argument previously rejected by the U.S. Supreme

Court:  because the City and County Defendants disclosed the Offense and Incident Reports to

Bauer Magazine allegedly in violation of Arkansas law, Bauer Magazine's publication of the

Reports is somehow unlawful.[3]  Yet, as established on this motion, and ignored by Plaintiff, the

Supreme Court in *Florida Star* held that it is "not . . . unlawful for a newspaper to receive

[reports] when furnished by the government" even where "state officials are not required to

---

[2] Plaintiff only cites *Florida Star* in passing and, even then, merely observes that *Florida Star* and its progeny are limited to their specific facts.  Pl.'s Opp'n at 10 (citing *Ross v. Midwest Commc'n Inc.*, 870 F.2d 271, 275 (5th Cir. 1989)).  Yet, *Ross* does not even mention *Florida Star* and even more troubling for Plaintiff, the Fifth Circuit in *Ross* held that the publication of a rape victim's name and the details of the rape were protected from liability.  *Ross*, 870 F.2d at 275.  Further, Plaintiff makes no attempt to distinguish the facts of *Florida Star*, from the facts at issue here, nor could he.  His own complaint establishes that the Reports were released to Bauer Magazine pursuant to FOIA requests.  Compl. ¶¶ 45, 48, 55, 58.

[3] As discussed in the Bauer Defendants' motion to dismiss, the City and County Defendants have argued that the release of the Offense and Incident Reports was proper under Arkansas' FOIA statute.  Bauer Defs.' Mot. to Dismiss at 13 n.10.

disclose such reports" and that "the fact that the Department apparently failed to fulfill its obligation under [the applicable statute] not to 'cause or allow to be . . . published' the name of a sexual offense victim" did not "make the newspaper's ensuing receipt of this information unlawful."  491 U.S. at 536.  In other words, the fact that the police did not adhere to Florida's statute, did not make the newspaper's receipt and publication of that information unlawful.  *Id.* On comparable facts, the Supreme Court of Arkansas followed *Florida Star*'s clear holding finding that the First Amendment protected a newspaper's publication of a rape victim's name based on a police report and witness statements *even if* those reports should not have been made available to the newspaper.  *See Whiteside*, 295 S.W.3d at 802-03 ("the Newspaper should not be faulted for obtaining the report on the [police records] system when it was placed there by an employee of the police department devoid of any restrictions . . . . While the release of a specific portion of the report may have been a mistake made by the police, it was not the result of any wrongdoing by the Newspaper.").

In short, whether it was proper for the Springdale Police Department and the Sheriff's Office to release the Reports to Bauer Magazine pursuant to its proper FOIA requests is irrelevant.  Once the Springdale Police Department and the Sheriff's Office released the Reports to Bauer Magazine, publication of that information is not actionable.  *See*, *e.g., Florida Star*, 491 U.S. at 536.  It is "not incumbent upon" the Bauer Defendants "to determine what information could or could not be published *after* its release by the police."  *Whiteside*, 295 S.W.3d at 804 (emphasis added).  Even if Bauer Magazine had reason to know the Reports should not have been released consistent with Arkansas law—which they did not—the publication of the Articles would *still* be protected under the First Amendment.  *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (holding that despite knowledge of the illegal source of the intercepted communications,

4

the First Amendment *still* protected the defendants' public disclosures).

Next, Plaintiff attempts to argue that the Bauer Defendants were somehow complicit in the purported unlawful disclosure of the Reports. *See* Pl.'s Opp'n at 6-7. But nothing in the undisputed sequence of events supports any wrongdoing by the Bauer Defendants. Plaintiff's few allegations to the contrary are far from plausible. The alleged fact that the Chief of Police, Defendant O'Kelley was good friends with a partner at the law firm that issued the FOIA requests says nothing, and most certainly does not support unlawfulness on the part of Bauer Magazine. *Id.* at 7. Similarly, Plaintiff's allegation that Defendant O'Kelley reassured the law firm that the redacted Offense Report would be ready by the deadline required by Arkansas law to produce documents responsive to the FOIA request, Compl. ¶ 47, merely shows that Defendant O'Kelly was working to comply with a legal deadline, not any unlawful action by the Bauer Defendants. Nor is Plaintiff's position furthered by the observation that the information in the FOIA requests and prior reporting "suggests that the Bauer Defendants were receiving information from an inside source." Pl.'s Opp'n at 7. If true, that is only basic reporting, not impropriety.

Moreover, Plaintiff's own allegations refute any inference of impropriety by Bauer Magazine. For example, on the same day the City Defendants disclosed the redacted Offense Report to Bauer Magazine, the City Defendants purportedly disclosed the same redacted Offense Report to "a local news organization pursuant to a separate FOIA request." Compl. ¶ 55. Plaintiff does not allege that the local news organization had any relationship with Defendant O'Kelley or the other City Defendants. Any inference that Bauer Magazine was somehow complicit in the purported unlawful disclosure of the Reports based on an alleged friendship between Defendant O'Kelly and an attorney—not alleged to be involved with Bauer Magazine's

FOIA request but merely employed by the law firm that issued the FOIA request—is not plausible in light of the other disclosure made by the City Defendants to an unrelated news organization where no purported relationship was alleged.

More troubling than even Plaintiff's attempt to imply improper meaning to an alleged friendship between an attorney not involved in the FOIA requests and the Chief of Police, however, is Plaintiff's suggestion that his privacy was invaded before the FOIA release, observing that in the May 19 Article "Defendants began publishing details about Plaintiff's sexual abuse *before* even receiving responses to its FOIA requests."  Pl.s' Opp'n at 7, 10, 16 (emphasis original).  Plaintiff has already admitted in filings in *this* action before *this* Court that the May 19 Article, which was published before the Offense and Incident Reports were received by Bauer magazine,

> addressed only the bare facts that Plaintiff had been investigated in relation to molestation accusations made while he was a minor. The story did not reveal any [sic] the information at the heart of this lawsuit.  It revealed *nothing about the alleged victims or the details of the alleged sexual contact* as that information was not yet known to the public or part of the public record.

Pl.'s Opp'n to City Defs.' Mot. to Dismiss, at 24.  *See also id.* at 11 (emphasis added).

Moreover, this Court found that the "Complaint alleges that the identities of Josh Duggar's victims were *not* in the public record before the FOIA disclosures were made."  ECF Dkt. No. 62 at 13 (emphasis added).  Plaintiff is bound by his filings in this action and he cannot now rely on this very same Article as evidence that the Bauer Defendants' invaded his privacy *before* release of the Reports via FOIA where he previously took the exact opposite position before *this* Court.[4]

---

[4] Similarly unavailing is Plaintiff's allegation that Bauer Magazine's FOIA request stated that the requested records "are not exempted from required disclosure under present interpretations of the Act, and it is believed that the Attorney General would concur that the information must be released" was intentionally false or improper.  Compl. ¶ 7.  As Plaintiff's allegation makes clear, this was merely Bauer Magazine's—an entity Plaintiff never alleges was responsible for deciding whether records may be properly released under FOIA—opinion, not a legal representation that must be followed by the recipients of the request.

Finally, Plaintiff vainly tries to argue that the "lurid details" disclosed by the Articles are not matters of legitimate public concern. Pl.'s Opp'n at 8. But, again, Plaintiff just ignores the controlling Supreme Court law and do not cite a single case to support his position. As the Supreme Court precedent establishes, a news article about a criminal sexual assault investigation "concern[s] 'a matter of public significance" because "the commission, and investigation, of a violent crime which had been reported to authorities" "involve[s] a matter of paramount public import." *Florida Star*, 491 U.S. at 537. *See also Cox Broadcasting Corp.*, 420 U.S. at 492; *Lowe v. Hearst Communications,* 414 F. Supp. 2d 669, 674 (W.D. Texas 2005).

Nor is there any basis to parse out newsworthy and non-newsworthy facts to impose liability based on publication of purportedly non-newsworthy facts, where, as here, the publication is of legitimate public concern and the facts published are related to the newsworthy topic. *See* Bauer Defs.' Mot. to Dismiss at 19 n.16. *See also Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 251 (5th Cir. 2007) ("This Circuit has declined to get involved in deciding the newsworthiness of specific details in a newsworthy story where the details were 'substantially related' to the story."); *Gilbert v. Med. Econ. Co.*, 665 F.2d 305, 308–09 (10th Cir. 1981) (finding that purportedly non-newsworthy details were "connected to the newsworthy topic" and thus, protected); *C.L., M.L. ex rel. C.A.L.*, 2013 WL 4538836, at *3 (rejecting plaintiff's argument that "the public's legitimate interest does not extend to the explicit and prurient details of the minor plaintiffs' allegations" because even assuming "that details about the sexual abuse of minors falls within the scope of 'highly personal information . . .the Individual Defendants cannot be held liable for disseminating a lawfully obtained police report that touches on matters of legitimate public concern, even if the report also contains private

details falling outside the scope of public's interest.'").[5]  Here, the facts disclosed in the Reports are not only related to Plaintiff's felony sexual assault but also independently address issues of public concern including the fact that the allegations were not brought to the attention of the police for well over a year and, even then, the police officer did not follow policy and report the allegations to the Arkansas Child Abuse Hotline.  *See* Bauer Defs.' Mot. to Dismiss at 16-19.

Plaintiff's decision to ignore controlling and unequivocal United States Supreme Court precedent that claims arising out of the publication of lawfully obtained truthful information cannot withstand First Amendment scrutiny does not change the necessary result.  Plaintiff's claims against the Bauer Defendants must be dismissed.

## II.    THE ARTICLES ARE PROTECTED UNDER THE FAIR REPORT PRIVILEGE

Plaintiff does not dispute that Arkansas recognizes the fair report privilege as stated in the Restatement (Second) of Torts § 611.  *See Butler v. Hearst-Argyle Television, Inc.*, 49 S.W.3d 116, 119 (Ark. 2001); *Whiteside*, 295 S.W.3d at 801.  Instead, Plaintiff argues that the fair report privilege applies *only* when a defamation claim is brought.  *See* Pl.'s Opp'n at 16.  Not true.  In *Butler*, which recognized and applied the fair report privilege, plaintiff brought a claim for invasion of privacy in addition to a defamation claim and the action was dismissed under the fair report privilege.  49 S.W.3d at 117.  The Restatement likewise states that the fair report privilege applies to claims for "either defamation *or* for invasion of the right to privacy."  Restatement (Second) of Torts § 611, cmt. b (emphasis added).  Equally unavailing is Plaintiff's contention that the fair report privilege protects only public meetings or reports.  Pl.'s Opp'n at 16.  It is well established that the fair report privilege protects reports of all official proceedings, including

---

[5] Even the *Ross* case cited by Plaintiff expressly cautioned courts to "resist the temptation to edit journalists aggressively" because "[r]eporters must have some freedom to respond to journalistic exigencies without fear that even a slight, and understandable, mistake will subject them to liability.  Exuberant judicial blue-penciling after-the-fact would blunt the quills of even the most honorable journalists."  *Ross*, 870 F.2d at 275.

police reports.  *See* Restatement (Second) of Torts § 611; *Butler*, 49 S.W.3d at 119 (holding that

police reports and witness statements are "reports of official proceedings" subject to the fair

report privilege).  Accordingly, Plaintiff's claims also fail because they are protected by the fair

report privilege.

III.    **PLAINTIFF FAILS TO PLAUSIBLY STATE NECESSARY ELEMENTS FOR
        EACH CLAIM UNDER ARKANSAS LAW**

    A.    **Plaintiff Fails To State A Claim For Invasion Of Privacy – Public Disclosure
          Of Private Facts**

        Even if somehow Plaintiff's claim was not barred by the First Amendment or privileged

under the fair report doctrine, it would still fail since the Articles clearly address issues of

legitimate public concern.  *See In re Dunbar*, 446 B.R. 306, 314 (Bankr. E.D. Ark. 2011) (a

required element of a claim for public disclosure of private facts is that "the matter publicized is

of a kind that . . . is not of legitimate concern to the public."); Bauer Defs.' Mot. to Dismiss at

16-19.[6]  As set forth above, reports on criminal investigations are consistently found to be

newsworthy and a matter of public concern.  *See supra* at 6.  Moreover, despite Plaintiff's

unsubstantiated allegation that "[a]ll facts at issue here remained private," the Reports clearly

indicate that the facts regarding Plaintiff's molestation of his sisters were not private when

published.  "Elders" from the Duggars' church, a family friend, a separate individual who

reported the abuse, and Cpl. Joseph Hutchins of the Arkansas State Police (who took no action

concerning the report) all were aware of Josh Duggar's sexual assaults prior to the publication of

the Articles.  *See* Incident Report at 6-7; Offense Report at 15.  Even presuming the facts as

---

[6] This Court's September 29, 2017 Order regarding the City and County Defendants' motions to dismiss found that
because Plaintiff plausibly alleged his constitutional right to privacy was invaded , Plaintiff also adequately plead a
claim for the tort of invasion of privacy – public disclosure of private fact.  ECF Dkt. No. 62 at 22.  The Court,
however, did not address whether Plaintiff adequately plead an element of the public disclosure of private fact tort:
whether the Articles are matters of public concern.  As discussed at length in the opening motion and *supra*, Plaintiff
has not.  *See supra* at 6; Bauer Defs.' Mot. to Dismiss at 16-19.

alleged are true, Plaintiff has failed to establish the requisite elements of his invasion of privacy claim and thus, it must be dismissed.

      **B.**      **Plaintiff Fails To State A Claim For Invasion of Privacy – Appropriation**

For the same reason Plaintiff's publication of private facts claim fails, Plaintiff's appropriation claim fails.  Specifically, the Articles at issue "concerns matters that are newsworthy or of legitimate public concern" and thus, cannot form the basis for Plaintiff's appropriation claim.  *See*, *e.g., Battaglieri v. Mackinac Ctr. For Pub. Policy*, 680 N.W.2d 915, 917 (Mich. Ct. App. 2004).  *See also* Bauer Defs.' Mot. to Dismiss at 16-19; 22-25.  Plaintiff fails to identify a single case where the publisher of a newsworthy article was held liable for appropriation.  Then, Plaintiff again ignores Supreme Court precedent establishing that the fact that an entity is engaged in the business of publishing does not mean that publication was for a commercial, non-newsworthy, purpose.  *See Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 801 (1988); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973); *New York Times Co. v. Sullivan,* 376 U.S. 254, 266 (1964).  And the fact that an online Article promoted the companion newsstand edition's reporting on Duggar does not change the result.  Pl.'s Opp'n at 12.  As the Bauer Defendants established on this motion – and Plaintiff fails to distinguish – publishers have the constitutional right to "tout" their reporting in promotional spots or advertisements.  *See Leddy v. Narragansett Television, L.P.*, 843 A.2d 481, 490 (R.I. 2004); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 147 (D.D.C. 1995).  In the end, Plaintiff does little more than recite the elements of an appropriation claim without addressing the clear shortcomings identified by this motion.  Accordingly, this claim must be dismissed as well.

### C.  Plaintiff Fails To State A Claim For Invasion of Privacy – Intrusion Upon Seclusion

Plaintiff's claim for intrusion upon seclusion fails to plausibly allege that an actionable intrusion occurred.  *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex. App. 1982) ("This type of invasion of privacy is generally associated with either a physical invasion of a person's property or by eavesdropping on another's conversation with the aid of wiretaps, microphones or spying.") *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994). *See also Steinbuch v. Hachette Book Grp.*, No. 08 Civ. 00456 (JLH), 2009 WL 963588, at *3 (E.D. Ark. Apr. 8, 2009).  Plaintiff's reliance on *dicta* that the tort of intrusion includes "infringement upon a person's emotional sanctum and the notions of civility and personal dignity," Pl.s' Opp'n at 14 (citing *Coombs v. J.B. Hunt Transp., Inc*., 388 S.W.3d 456, 460-61 (Ark. Ct. App. 2012); *Fletcher v. Price Chopper Foods of Trumann, Inc*., 220 F.3d 871, 876 (8th Cir. 2000)), does not address, as established on this motion, that neither the *dicta* in *Coombs* nor *Fletcher* supports Plaintiff's position.  While this Court's decision on the City and County Defendants' motions to dismiss noted that *Coombs* is "instructive," ECF Dkt. No. 62 at 23, in *Coombs*, unlike here, the intrusion at issue was in fact physical.  *Coombs*, 388 S.W.3d at 461. Plaintiff alleged that unwanted visitors entered his room, undressed him, wrote on his body, and took pictures of him undressed.  *Id.*  Here, Plaintiff's only allegation that the Bauer Defendants intruded relates to the publication of the Offense Report, Incident Report, and related articles. Compl. ¶ 109.  *See also id.* ¶¶ 108-113.  Similarly inapposite is the decision in *Fletcher*, which found an intrusion claim could not stand because "that information could otherwise have been obtained by proper means."  220 F.3d at 876.  *See also* Bauer Defs.' Mot. to Dismiss at 26. Extending the courts' decisions in either *Coombs* or *Fletcher* to apply to the publication of

newsworthy information obtained through proper FOIA requests where no physical intrusion is alleged improperly stretches the bounds of those decisions.

Plaintiff also makes no attempt to allege, plausibly or otherwise, that the Bauer Defendants "believed or [were] substantially certain, that [they] lack[] the necessary legal or personal permission to commit the [alleged] intrusive act." *See Wal-Mart Stores, Inc. v. Lee*, 74 S.W.3d 634, 645 (Ark. 2002). The Bauer Defendants had the "necessary legal . . . permission" to publish facts related to the investigation and the Reports and thus did not believe that they lacked the legal permission required. *See supra* at 2-7; Bauer Defs.' Mot. to Dismiss at 27. Even taking Plaintiff's allegations as true, there is no reading of the Complaint that permits any inference that the Bauer Defendants believed they lacked legal authority to publish facts of the investigation. As discussed at length, the Supreme Court precedent is clear—even if the information was improperly disclosed, once disclosed its publication is not actionable. *See supra* at 4; Bauers' Defs.' Mot. to Dismiss at 11-16 n.11; *c.f. Fletcher*, 220 F.3d at 847 n.3 (noting the absence of "any Arkansas authority to support this remarkably broad proposition"). Because Plaintiff fails to allege the requisite elements of an intrusion claim, Plaintiff's claim must be dismissed.

D.     **Plaintiff Fails To State A Claim For Tort Of Outrage**

The only conduct attributed by Plaintiff to the Bauer Defendants is the publication of newsworthy information of public concern regarding sexual assaults committed by a public figure. While this Court noted that the fact "[t]he test for outrage is an extremely narrow test that is committed by the most heinous conduct" that does not mean it is an "impossible" test, ECF Dkt. No. 62 at 25-26, the publication of newsworthy information of public concern does not even begin to rise to the level of outrage required to plausibly allege a claim for outrage. *See* Bauer Defs.' Mot. to Dismiss at 29 (collecting cases). Plaintiff asserts no support for the contention

that publishing information released by the police in response to FOIA requests is sufficient to

plead a claim for the tort of outrage.  The fact that other news outlets purportedly declined to

publish the Reports is irrelevant.[7]  *See Smith*, 443 U.S. at 99 (finding newspapers could not be

held liable for publishing a juvenile offender's name where that information was publically

available notwithstanding the fact that one newspaper initially omitted the juvenile offender's

name from publication while another newspaper published the juvenile offender's name and

picture).  Even being "mindful of the importance in which our society" places on the protection

of minor victims of sexual assault, our society also places the utmost importance on

constitutional freedoms of speech and press.  Accordingly, Plaintiff has not pled the required

elements for his tort of outrage claim and it must be dismissed.

## IV.   PLAINTIFF'S CLAIMS ARE SUBJECT TO ARKANSAS' ANTI-SLAPP STATUTE AND MUST BE DISMISSED

By its plain language Arkansas' Anti-SLAPP statute applies to Plaintiff's claims.  Ark.

Code Ann. §§ 16-63-501 *et seq*.  The statute provides that "[a]ny person making a privileged

communication or performing an act in furtherance of the right of free speech or the right to

petition government for a redress of grievances . . . in connection with an issue of public interest

or concern shall be immune from civil liability."  *Id.* § 504.  As established, the Articles are

protected from civil liability under Section 504 as they plainly involve an act in furtherance of

the right to free-speech and enjoy First Amendment protection and also fall within the non-

---

[7] The articles relied upon by Plaintiff do not state that the publications declined to publish the Reports but instead state that while the publications usually refrain from identifying the victims of sexual assault, Jill Dillard's and Jessa Seewald's names were published because they had already identified themselves as victims of Josh Duggar's sexual assault.  *See* Pl.'s Opp'n at 15 n.5 (citing https://www.washingtonpost.com/news/acts-of-faith/wp/2015/06/03/what-to-expect-from-the-fox-news-interview-with-josh-duggars-parents/?utm_term=.f6f3f719d965; http://www.theblaze.com/news/2015/06/03/sister-of-reality-star-josh-duggar-says-she-was-a-victim-but-defends-him/; http://atlanta.cbslocal.com/2015/06/03/josh-duggars-sister-says-she-was-victim-of-her-older-brother/).  Like the Articles at issue, one of the reports also states that four of Plaintiff's sisters were the victims of his sexual assaults.  *Id.* (citing https://www.washingtonpost.com/news/acts-of-faith/wp/2015/06/03/what-to-expect-from-the-fox-news-interview-with-josh-duggars-parents/?utm_term=.f6f3f719d965).

exhaustive enumerated list of protected acts under Section 503.  Bauer Defs.' Mot. to Dismiss at 29-33.

Plaintiff incorrectly attempts to limit the Anti-SLAPP statute only to actions "exercising the right to tell the government what they believe."  *See* Pl.'s Opp'n at 17.  The statute itself recognizes that "[t]he valid exercise of the constitutional rights of freedom of speech . . . should not be chilled through abuse of the judicial process."  Ark. Code Ann. § 502.  Moreover, Arkansas' statute was modelled on Georgia's similar Anti-SLAPP statute, *see* P. Caleb Patterson, *Have I Been Slapped? Arkansas's Attempt to Curb Abusive Litigation: The Citizen Participation in Government Act*, 60 Ark. L. Rev. 519, 521 (2007), which has been applied to protect publishers of news reports from strategic lawsuits and liability.  *See Boxcar Development Corp. v. New World Communications of Atlanta, Inc.*, No. 08 Civ. 2248, 2008 WL 1943313, at *3, *4 (Ga. Super. Ct. May 1, 2008) (finding a news report about potential government investigation into plaintiff "was an act that could reasonably be construed to be in furtherance of the right of free speech or the right to petition the government for redress of grievances . . . in connection with an issue of public interest or concern" and thus "the procedural requirements of Georgia's anti-SLAPP statute clearly apply.").  *See also Armington v. Fink*, No. 09 Civ. 6785, 2010 WL 743524, at *5 (E.D. La. Feb. 24, 2010) (applying Louisiana's Anti-SLAPP statute to claims related to the New York Times Magazine's article criticizing a New Orleans hospital's handling of patients during Hurricane Katrina); *Shepard v. Schurz Commc'ns, Inc.*, 847 N.E.2d 219, 224 (Ind. Ct. App. 2006) (applying Indiana's Anti-SLAPP statute to an action brought against a newspaper for an article publicizing the fact that the town disclosed the names of over fifty individuals delinquent on their bills to a third party without permission).  For these reasons,

and the reasons already set forth in this motion to dismiss, the Anti-SLAPP statute applies to Plaintiff's claims.

Plaintiff had ten days from the filing of the Bauer Defendants' motion to dismiss to properly verify his claims.  Ark. Code Ann. § 506.  Despite this, Plaintiff has not properly verified his claims, nor has he argued that he could verify his claims as required by the Anti-SLAPP statute.  As Plaintiff's claims remain unverified under Section 505, they must be stricken pursuant to the Anti-SLAPP statute.  *Id.*

## CONCLUSION

Since Plaintiff's claims are barred by the First Amendment and the Anti-SLAPP statute or alternatively, Plaintiff has failed to plausibly allege facts supporting his claims, the Bauer Defendants' respectfully submit that the Court should grant their motion to dismiss the Complaint under Rule 12(b)(6) and award reasonable expenses, including attorneys' fees, incurred as a result of Plaintiff filing this action pursuant to Arkansas Code Ann. § 16-63-506.

Dated: New York, New York
      October 4, 2017

                                Respectfully submitted,

                                DAVIS WRIGHT TREMAINE LLP

                                By:  /s/ Elizabeth A. McNamara
                                Elizabeth A. McNamara
                                Jamie S. Raghu
                                1251 Avenue of the Americas, 21st Floor
                                New York, New York 10020
                                Telephone: (212) 489-8230
                                Fax: (212) 489-8340
                                Email:   lizmcnamara@dwt.com
                                          jamieraghu@dwt.com

                                Cynthia W. Kolb
                                CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C.

500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 371-9999
Fax: (501) 371-0035
Email:      ckolb@cgwg.com

*Attorneys for Defendants Bauer Publishing Company,
L.P.; Bauer Magazine, L.P.; Bauer Media Sales, Inc.;
Bauer, Inc.; Heinrich Bauer North America, Inc.; and
Bauer Media Group USA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gregory F. Payne
Attorney at Law
438 E. Millsap Road, Suite 103
Fayetteville, AR 72703

Travis Wayne Story
Story Law Firm, PLLC
P.O. Box 9210
Fayetteville, AR 72703

Jason E. Owens
Rainwater, Holt & Sexton, P.A.
P.O. Box 17250
Little Rock, AR 72222-7250

Robert Justin Eichmann
Thomas N. Kieklak
Harrington, Miller, Kieklak, Eichmann & Brown, P.A.
4710 S. Thompson, Ste. 102
Springdale, AR 72764

Susan Keller Kendall
Kendall Law Firm, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, AR 72758

/s/ Jamie S. Raghu